UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 10-00434-TLM |
| MICHAEL J. THIEL and ) | |
| STEFANIE A. THIEL, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

This is a chapter 13 case commenced by a joint petition of Michael and Stefanie Thiel ("Debtors") on February 26, 2010.[1] The issue before the Court is confirmation of Debtors' amended chapter 13 plan, Doc. No. 35 ("Plan"). The standing chapter 13 trustee, Kathleen McCallister ("Trustee") objects. The matter was taken under advisement at the close of briefing on December 17, 2010. This Decision constitutes the Court's findings and conclusions. Fed. R. Bankr. P. 7052, 9014.

**BACKGROUND AND FACTS**

Debtors filed a Form 22C (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income) at the

---

[1] All statutory references, to chapter, section or otherwise, are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532, unless otherwise indicated.

MEMORANDUM OF DECISION - 1

same time as their petition. *See* Doc. No. 5.[2] That Form 22C showed total joint monthly income of $12,690.65, which renders Debtors' annualized monthly income well above the applicable median family income for their family of six. Thus, the "applicable commitment period" for their Plan is 60 months. *See* § 1325(b)(4)(A)(ii). Form 22C also calculated Debtors' monthly disposable income under § 1325(b)(2) and (3), arriving at an amount of $1,102.70. Doc. No. 5 at line 59.

Despite calculating a monthly disposable income of $1,102.70 on Form 22C, Debtors' initial plan proposed monthly payments of only $304.00 for 60 months. Doc. No. 10 at 3. Through a series of amended plans, objections and hearings, Debtors' Plan, Doc. No. 35, was proposed. It provides for monthly payments of $304.00 (4 months), $1,607.00 (25 months), and $1,687.00 (31 months). *Id.* at 2–3.[3] Over the life of the Plan, therefore, Debtors propose to pay a total (*sans* tax refunds) of $93,688.00.[4]

Debtors' Plan requires Trustee to pay certain secured creditors' claims

---

[2] For brevity, the Court will often refer to Form 22C rather than to the multiple Code provisions to which this Official Form relates.

[3] The Plan also provides for contribution of any net income tax refunds during the life of the Plan. This Decision, for simplicity's sake, deletes discussion of the impact of refunds, especially in that neither Debtors nor Trustee have attempted to quantify them for purposes of a § 1325(b) analysis.

[4] $304.00 x 4 = $1,216.00; $1,607.00 x 25 = $40,175.00; $1,687.00 x 31 = $52,297.00. $1,216.00 + $40,175.00 + $52,297.00 = $93,688.00.

MEMORANDUM OF DECISION - 2

under § 1325(a)(5)(B) totaling $70,680.00,[5] proposes to pay the fees and costs of Debtors' counsel, and pays Trustee's 28 U.S.C. § 586 fees. *Id.* ¶¶ 5.1, 3.3, and 3.2, respectively. Counsel's fees are at least $7,505.21, *see* Doc. No. 63 (minute entry),[6] and for purposes of this Decision the Court estimates Trustee's fees at 10% of the payments through the Plan, or $9,369.00.[7] The amounts needed for payments to secured creditors ($70,680.00), Debtors' counsel ($7,505.21) and Trustee ($9,369.00) total $87,554.21, leaving $6,133.79 for distribution to unsecured creditors.

**DISCUSSION AND DISPOSITION**

Because Trustee objects to confirmation, *see* Doc. No. 42, and Debtors do not propose to pay their unsecured creditors in full, Debtor's Plan must provide that all of their "projected disposable income" be "applied to make payments to

---

[5] Each of these creditors is to receive a set monthly amount which includes interest over 60 months. *Id.* The three monthly amounts are $397.00, $742.00 and $39.00, which equals $1,178.00. That amount multiplied by 60 equals $70,680.00. There are other secured creditors treated by the Plan that are to be paid directly by Debtors rather than through the Plan payments administered by Trustee.

[6] The Application under § 330(a)(4)(B) approved at that hearing was for services through October 28, 2010, only. *See* Doc. No. 58. On February 17, 2011, Debtors' counsel re-noticed the application for hearing, despite its prior approval, contending that Trustee had refused to endorse the order approving compensation. *See* Doc. No. 65.

[7] This averages to $156.15 per month over the 60-month Plan term. The Court appreciates that Debtors estimated one figure on Form 22C for chapter 13 administrative expense, but it was at a significantly lower plan funding amount, and that Trustee estimated a different figure in her suggested "correct" Form 22C, Doc. No. 51-1.

MEMORANDUM OF DECISION - 3

unsecured creditors under the plan." Section 1325(b)(1)(B).[8] Thus, Debtor's Plan must propose payments sufficient to cover the attorney's fees, administrative expenses and secured claims to be paid through the Plan, in addition to Debtors' projected disposable income which must be paid to "unsecured creditors" alone. *See id.*

Of the $93,688.00 Debtors propose to pay into the Plan, $6,133.79 will be available for distribution to unsecured creditors. That amount represents less than 10% of the $66,162.00 that Debtors' own Form 22C would require be distributed to unsecured creditors.[9] Debtors argue, however, that their "reasonable" expenses are higher in amount than what Form 22C (and, more to the point, § 1325(b)(2) and (3) on which the Form is based) allows. As a result, Debtors claim their

---

[8] Section 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

[9] Form 22C showed a monthly disposable income of $1,102.70, which would amount to $66,162.00 to unsecured creditors over the 60-month applicable commitment period. The Court appreciates that Trustee's calculations, *see*, *e.g.*, Doc. No. 60 (supplemental brief), are different and that she argues that a "correct" Form 22C would result in a monthly disposable income of $1,699.76, or $100,185.60 to unsecured creditors over the 60-month term of the Plan. Because the Court decides, infra, that the Plan is not confirmable, it need not reach issues raised by Trustee's critique of Debtors' Form 22C.

MEMORANDUM OF DECISION - 4

"actual" disposable income is less than what Form 22C states.[10] In particular, they assert their transportation expense, including insurance and fuel, is $1,290.00 per month rather than the $422.00 per month Form 22C (and § 1325(b)(3) and § 707(b)(2)(A)(ii)(I) incorporated thereby) allows.[11] The $868.00 difference would change Form 22C's disposable income from $1,102.70 to $234.70 (or $14,082.00 over 60 months).

However, to be clear, Debtors did not advocate simply adjusting their allowed transportation expense under the Local Standard by the excess amount they "actually" incurred.[12] Instead, they rely on the discrepancy between their actual expense and the allowed amount as grounds for casting aside Form 22C (with its specified expense allowances) in its entirety. Debtors' attempt at confirmation argues, in essence, that the Form 22C mark – whatever it might accurately be – is irrelevant and that schedules I and J alone, together with

---

[10] "Disposable income" is, under § 1325(b)(2), "currently monthly income" less certain "amounts reasonably necessary to be expended." "Current monthly income" is defined and calculated under § 101(10A), and, for above-median income debtors, "amounts reasonably necessary to be expended" are determined through use of the means test, *see* § 1325(b)(3) (incorporating § 707(b)(2)(A) and (B)).

[11] *See* Doc. No. 34 (amended schedules I and J) (showing $895.00 transportation expense and $400.00 auto insurance expense). Testimony and argument revolved in large part around the fact that two of Debtors' four teenage children were 17 and licensed drivers, and on the costs of fuel, insurance and related expenses for them, the Debtors, and the four family vehicles. The last-filed schedules I and J asserted that Debtors had a net of $1,607.90 monthly with which to fund the Plan. Doc. No. 34.

[12] That approach would be futile. The proposed Plan still would not provide enough funding to meet this "adjusted" projected disposable income figure of $14,082.00. Recall that the last revised funding proposal would generate a total of $6,133.79 for unsecured creditors, less than half of the $14,082.00 even this tweaked Form 22C approach would require.

MEMORANDUM OF DECISION - 5

testimony supporting those budget schedules, should be held an acceptable alternative means to determine disposable income for above-median income debtors. *See* Doc. Nos. 53, 57 (briefs).

Debtors support their response to the problem of Plan funding and Trustee's § 1325(b)(1)(B) objection by invoking *Hamilton v. Lanning*, ___ U.S. ___, 130 S.Ct. 2464 (2010). Debtors read and characterize *Lanning* as supporting the proposition that Form 22C should be used to determine the length of the plan (36 or 60 months), and then – *unless* Form 22C is fully "accurate" – schedules I and J should be used to determine a debtor's "reasonable" expenses and project the debtor's disposable income. *See*, *e.g.*, Doc. No. 57 (post-trial brief) at 3–6.[13] This is, in their view, a way that above-median income debtors can prove

---

[13] Debtors state, *inter alia*:

> Form 22C should be used to determine length of the plan and a starting point for the plan payment if it is reasonably connected to the income and expenses set forth on [schedules] I and J.
>
> Form 22C should be used in the event the debtor's income and expenses have not changed significantly in the six months preceding bankruptcy and are not reasonably foreseeable to change after the bankruptcy filing. If this is not the case, the Court should look to debtor's Schedules I and J.
>
> Form 22C has no basis in reality. It is a test formulated using standard allowed expenses without any connection to a debtor's projected expense.

Doc. No. 57 at 3. And, thus:

> [H]ow do we arrive at what is reasonable? The answer is simple. It has already been decided; all that is being requested is to revert back to pre BAPCPA caselaw in determining reasonableness of income and expenses.

*Id.* at 8.

MEMORANDUM OF DECISION - 6

compliance with § 1325(b)(1)(B).[14]

The Court concludes that not only do Debtors read *Lanning* far too broadly, their construction of *Lanning* cannot be harmonized with the subsequent decision of the Supreme Court in *Ransom v. FIA Card Services, N.A.*, ___ U.S. ___, 131 S.Ct. 716, 2011 WL 66438 (Jan. 11, 2011).

### A. *Lanning*

*Lanning* was an "income" case. It resolved a circuit split over whether "projected disposable income" should be determined by reference to a debtor's prebankruptcy "current monthly income" alone (what some called a "mechanical" approach) or whether a bankruptcy court could engage in a "forward-looking approach." 130 S.Ct. at 2478.

The debtor in *Lanning* had received a one-time "buyout" that greatly inflated her income in the six-month prefiling period used to establish current monthly income under § 101(10A). This resulted in her being an above-median income debtor. Even though her Form 22C monthly expenses, calculated under § 707(b)(2), were far higher than her estimated expenses on schedule J, the "disposable income" under the means test and as shown on Form 22C was

---

[14] In post-hearing briefing, Debtors argue that, notwithstanding the different approach required by § 1325(b)(3) for calculating reasonable expenses for above-median income debtors, both above-median and below-median income debtors should be treated the same in regard to determining the "reasonable" expenses to be deducted from current monthly income, *i.e.*, through recourse to schedules I and J. They argue that "the intent of congress for above median debtors to pay to the best of their ability is met, largely due to the fact that they will be paying for twenty four additional months." Doc. No. 61 at 4.

MEMORANDUM OF DECISION - 7

$1,114.98, an amount far in excess of the $149.03 per month available as shown on schedules I and J. *Id.* at 2470.[15]

Relying on its interpretation of the term "projected" in § 1325(b)(1)(B), the Supreme Court adopted a "forward-looking" approach for determining a chapter 13 debtor's projected disposable income. *Id.* at 2469. It ultimately held:

> Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for any changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.

*Id.* at 2478.[16]

However, *Lanning* certainly did not suggest that looking beyond Form 22C would be the norm. It characterized the respondent's argument in that appeal as one where the statutory formula would be determinative in most cases but that, in "exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate adjustment," noting that this was "the stronger argument." *Id.* at 2471. It also provided the following guidance: "[A] court taking the forward-looking approach should begin by calculating disposable income, and in most cases,

---

[15] If the one-time receipt of income was not included, Lanning would have had a current monthly income that was below the state median. *Id.* She would have thus used schedule J expenses under § 1325(b)(2) against such income to arrive at her disposable income.

[16] *Lanning* effectively overruled, in part, *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d. 868 (9th Cir. 2008).

MEMORANDUM OF DECISION - 8

nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.* at 2475.

A fair reading of *Lanning* indicates that the Supreme Court did not there discard the BAPCPA amendments to § 1325, nor jettison the calculation of current monthly income or disposable income under the Code that finds expression in each chapter 13 case through Form 22C. To the contrary, it was clear that Form 22C is to be followed, except in those exceptional cases where a forward-looking approach is required to take into account "known or virtually certain" information impacting the debtor's income or expenses. *Id.* at 2475. The term "projected" allowed for such an approach. But the Supreme Court clearly did not sacrifice the means test in favor of schedules I and J in every case, or validate a reversion to pre-BAPCPA practice. The contention, here, that the Court should use Form 22C only if it is, in Debtor's terms, "reasonably connected" to schedules I and J reaches too far. Indeed, if in order to look beyond Form 22C all that was required was a showing that a debtor's actual expenses varied from the standard expenses allowed under the means test, deviation from Form 22C would be the rule, not the exception.[17]

---

[17] *See* 8 Collier on Bankruptcy ¶ 1325.08[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (finding no suggestion in *Lanning* that a court may rely on "projected" to deviate from the formula by, for example, altering expense allowances).

MEMORANDUM OF DECISION - 9

**B.**   *Ransom*

To the extent there was any doubt about the Supreme Court's willingness to adhere to the Code's language and structure in above-median income chapter 13 cases, its subsequent decision in *Ransom* lays it to rest.[18]  There the Supreme Court construed § 707(b)(2)(A)(ii)(I), as incorporated by § 1325(b)(3) in above-median income chapter 13 cases, to disallow an attempt to claim a vehicle-ownership expense[19] when the debtor's vehicle was owned free and clear.  *Ransom* emphasized the need to follow the plain language of the statute:

> "Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. ___, 130 S.Ct. 1324, 1329, 176 L.Ed.2d 79 (2010).  In particular, Congress adopted the means test – "[t]he heart of [BAPCPA's] consumer bankruptcy reforms," H.R. Rep. No. 109-31, pt. 1, p. 2 (2005) (hereinafter H.R. Rep.), and the home of the statutory language at issue here – to help ensure that debtors who *can* pay creditors *do* pay them.  See, *e.g.*, *ibid.* (under BAPCPA, "debtors [will] repay creditors the maximum they can afford").
>
> In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years.  §§ 1325(b)(1)(B) and (b)(4). . . .  For a debtor whose income is above the median for his State, the means test

---

[18]  The Court appreciates that *Ransom*, which obviously impacts the analysis, was issued after the briefing herein had closed.  Still, Debtors' attempts at construing *Lanning* as authorizing the type of wholesale discarding of Form 22C and a return to case-specific analysis under schedules I and J was not persuasive given the language of § 1325(b) and § 707(b), nor under *Lanning*'s own limited holding.

[19]  Such an expense was one of the "applicable monthly expense amounts specified under the National Standards and the Local Standards" pursuant to § 707(b)(2)(A)(ii)(I).

MEMORANDUM OF DECISION - 10

>   identifies which expenses qualify as "amounts reasonably necessary to be expended." *The test supplants the pre-BAPCPA practice of calculating debtor's reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations.* See, *e.g.*, *In re Slusher*, 359 B.R. 290, 294 (Bkrtcy.Ct.Nev. 2007).

131 S.Ct. at 721–22 (emphasis added).

Based on its interpretation of the term "applicable" in § 707(b)(2)(A)(ii)(I), the Supreme Court concluded that an above-median income debtor may claim an expense deduction only if the debtor will incur that expense during the life of his plan. *Id.* at 724. Of critical importance to the case at bar, the Court noted that its interpretation did not conflate "applicable" with "actual" costs:

>   Although the expense amounts in the Standards apply only if the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction. If a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures.

*Id.* at 727.[20] Such is the case here – Debtors' actual transportation expenses exceed the standard allowance. However, as explained by the Supreme Court in *Ransom*, Debtors may claim only the standard allowance, rather than their actual expenses.

*Ransom* was not oblivious to the fact that such formulaic expenses or deductions might not match a debtor's actual out-of-pocket expenditures, but

---

[20] *Ransom* notes, though, that for "Other Necessary Expense" categories, a debtor may deduct his "actual" expenses consistent with the language of the means test. *Id.*

MEMORANDUM OF DECISION - 11

found that Congress clearly expressed a requirement that the formula be applied notwithstanding. *Id.* at 725. There will, of course, be cases where adhering to the statutory text and formula will create anomalous results.

> But this kind of oddity is the inevitable result of a standardized formula like the means test . . . . Such formulas are by their nature over- and under-inclusive. In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces.

*Id.* at 729.[21]

Applying *Ransom*, and declining to interpret *Lanning* in a fashion inconsistent with *Ransom* so as to allow Debtors to here argue that their higher "actual" transportation expenses are a "known or virtually certain" factor justifying departure from the relevant Local Standard, leads inexorably to the conclusion that the Plan may not be confirmed. Debtors, who are conceded to be above median income, cannot simply jettison Form 22C in favor of schedules I and J under an unduly expansive reading of *Lanning*. Prior to making that effort, Debtors completed a Form 22C that resulted in a disposable income amount substantially higher than what they propose to pay their unsecured creditors.

Debtors attempt to carry their burden of proving the Plan confirmable by pointing to schedules I and J and arguing that they are proposing to pay their "truly" projected disposable income as shown thereon. That approach does not

---

[21] *Accord Baird v. Carroll*, 2011 WL 338001, at *14 (6th Cir. Feb. 4, 2011).

MEMORANDUM OF DECISION - 12

meet the requirements of the Code. The attempt to replace BAPCPA's changes with a call for a return to the "good old days" before 2005 is not persuasive. Debtors' sole authority is *Lanning*, and it does not support such a rejection of the current statute in favor of the superceded version, especially in light of Ransom's recognition that Congress "eliminat[ed] the pre-BAPCPA case-by-case adjudication of above-median income debtors' expenses" in favor of the standardized statutory formula.

**CONCLUSION**

Debtors had the burden of establishing that their Plan met the confirmation requirements of the Code. They have failed to do so. Trustee's objection under § 1325(b)(1)(B) is well taken and will be sustained.[22] Confirmation of the Plan will be denied. Given the analysis and ruling above and denial of confirmation under the § 1325(b)(1) disposable income objection, the Court determines it need not address or otherwise reach the arguments on the other issues raised by the parties.[23]

---

[22] The Court also notes that tax debt raises a separate impediment to confirmation. Because the Plan has but $6,133.79 available after secured claims and administrative expenses are paid, it is not adequately funded and could not be properly confirmed because Debtors propose to pay through the Plan the priority tax claims ($13,373.23 per filed proofs of claim) in full. Doc. No. 35 at ¶ 3.4 (treatment of priority tax claims); *see also* § 1322(a)(2) (requiring full payment of claims entitled to § 507 priority unless the holder agrees to different treatment).

[23] The parties' debates over 401(k) contributions, good faith under § 1325(a)(3), and other matters would not make a difference in the outcome given the projected disposable income issue driven by the transportation expense. Additionally, certain of these issues may fall, for very practical economic reasons, by the wayside should Debtors look to propose a confirmable

(continued...)

MEMORANDUM OF DECISION - 13

An appropriate order will be entered by the Court.

DATED: March 1, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[23] (...continued)
amended plan.

MEMORANDUM OF DECISION - 14